PHOENIX BUILDING AND LOAN ASSOCIATION OF THE CITY OF NEWARK, RESPONDENT, v. TUNG-SOL LAMP WORKS, INC., APPELLANT.

Argued May 5, 1942—Decided July 17, 1942.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PORTER.

For the appellant, *Charles S. Barrett, Jr.*

For the respondent, *Herman Waldman.*

The opinion of the court was delivered by

PARKER, J.   This is a suit by a landlord against a tenant for an alleged balance of unpaid rent.   The action was tried with a jury and terminated with a direction of a verdict for the plaintiff.

The germ of the controversy, as we understand the matter, came into existence over ten years ago.   At the time, the title to the premises described as "No. 26-28 Clay Street, Newark, N. J., being a one-story garage type building," was then in a corporation called the Clay Holding Company (hereafter called "Clay"), subject to a mortgage held by the present respondent, Phoenix Building and Loan Association (hereafter called "Phoenix").   Under date of December 30th, 1931, Clay leased these premises to the present appellant, Tung-Sol Lamp Works, Inc. (hereafter called Tung-Sol) for a term of three years commencing January 1st, 1932, and ending December 31st, 1934.   The rent was to be $400 a month, payable monthly in advance except (and this is an important feature of the case) that on the signing of the lease the sum of $800 was to be paid, and of that sum $400 was to be applied as rent for January, 1932, and the other $400 considered as an advance payment for the *last* month of the term, namely, December, 1934; so that during the full period of this lease the landlord, Clay, would hold as a sort of advance security the sum of $400 which ultimately was to be applied to the rent for the last month of the term.

This arrangement seems to have been simple enough though somewhat unusual. But there was one element in the case which the parties, and particularly the tenant Tung-Sol, did not apparently foresee, which was the possible foreclosure of a mortgage held by Phoenix. In fact, the mortgage was foreclosed and the property bought in by Phoenix on the foreclosure sale before the end of the term. The case does not show the details of the foreclosure proceeding, but it is to be inferred that it terminated some time in the spring of 1933, because the next important document in the case is plaintiff's *Exhibit P-1*, being a lease dated June 1st, 1933, between Phoenix as landlord and Tung-Sol as tenant for the same property so far as appears, the annual rental being $6,600 payable in equal monthly payments. In short, Tung-Sol, the tenant, recognized the new owner and instead of attorning to it entered into a new lease. It is to be surmised that the Clay Holding Company was insolvent and therefore the balance of the preliminary deposit, namely $400 in reserve for rent of December, 1934, could not be recovered back. With this situation in view we turn to the lease by Phoenix of June 1st, 1933, *Exhibit P-1*, and find the following paragraph numbered 16:

"(16). The Tenant has this day deposited with the Landlord, the sum of Four Hundred Dollars ($400), the receipt whereof is hereby acknowledged by the Landlord, as collateral security for the payment of the rents to grow due to it from it under the lease, and for the faithful performance by it of all the other obligations hereunder, and for the payment of any and all sums of money for which it may be, or become, liable hereunder. Said sum of Four Hundred Dollars ($400) or so much thereof as shall not be applied for the purposes aforesaid, without interest, shall be returned to the Tenant, its successors or assigns, at the expiration of this lease, and upon the surrender of the herein demised premises, provided all the terms, conditions, covenants and agreements herein mentioned have been performed by the said Tenant, its successors and assigns."

And paragraph 17 of the same lease is an agreement for a renewal of the lease for a further term, subject to substan-

tially the same conditions, the only material difference being, that if some one else offers a larger rent, Tung-Sol will meet that offer. This situation, however, did not arise.

Toward the end of the term, under date of April 14th, 1938, a new lease was made between the same parties, but not on the entire premises covered by the former lease (this again is not material) for a term of two years to begin on June 1st, 1938, and to end on June 1st, 1940. According to the testimony, this lease as originally drawn did not contain any mention of the $400 deposit, but the evidence is that it was insisted by counsel for Tung-Sol (a New York attorney), that such a clause should be inserted, and this was accordingly done. The clause is in a somewhat abbreviated form and reads as follows: "The Tenant has deposited with the Landlord Four Hundred Dollars ($400) security under a prior lease dated June 1st, 1933, which expires on June 1st, 1938. The Landlord agrees to apply Three Hundred Dollars ($300) of said security in payment of the rent for the month of June, 1938, and the balance of One Hundred Dollars ($100) thereof on account of the rent for the month of July, 1938, under this lease."

The break between the parties occurred about two months after the beginning of the term of this last lease. The annual rental reserved thereunder was $3,600, or $300 a month. The rent for two months being unpaid, the plaintiff demanded $600; there appears to have been some discussion over the telephone, followed by a check from defendant to plaintiff for $200; and as appears plainly and concededly, the claim of Tung-Sol was in accordance with the clause just last above quoted, viz., that the June rent of $300 must be regarded as paid and also $100 on account of July, leaving a balance for July of $200. Phoenix refused to assent to this arrangement and finally brought the present suit.

The complaint is a little unusual and, instead of counting on a demand for the June and July rent, it sets out the making of the lease and its general terms, and quotes the passage above quoted with regard to the deposit of $400, and then goes on to aver that the $400 was not in fact ever paid,

and consequently did not need to be applied; and concludes by claiming the June rent of $300 and the July rent of $300.

The factual issue in the case seems to be not clearly presented either in the pleadings or in the evidence; but it may easily be read between the lines that the substantial defense was and is, that when the lease of 1933 was in negotiation, Tung-Sol insisted that the $400 remaining with Clay Holding Company be treated by Phoenix as an advance payment or security deposit against the rent reserved in the new lease. Whether Tung-Sol had been made a party defendant to the foreclosure does not appear; a receiver of rents was appointed, and he testified that he collected the rent up to some time in May, 1933. So the foreclosure terminated the rights of Clay Holding Company as landlord but apparently left the $400 in the hands of that company. As the first lease by Phoenix was dated April 14th, 1933, and created a new term which superseded the Clay lease for the last eighteen months of the term stated therein, we may reasonably infer that the rights of Tung-Sol under the Clay lease had been cut off by the decree and sale, and that Tung-Sol, desiring to continue in occupancy, was required to execute a new lease at the increased rent of $6,600 instead of $4,800.

Now there must have been some fair reason for inserting the recital of a $400 deposit in the first Phoenix lease of 1933, and the second Phoenix lease of 1938. The evidence shows that this was done at the insistment of Tung-Sol ("a good tenant" according to the testimony for plaintiff) and as a condition precedent to the execution of the 1938 lease. We recognize the settled rule that a recital of payment in a deed may be contradicted by parol evidence, but the testimony for the plaintiff does not fully meet the hypothesis supported by the evidence, oral and written, that all parties knew that the $400 could not be recovered from Clay Holding Company: that Tung-Sol made it a condition of signing a new lease with Phoenix, that this $400 be treated as if it had originally been deposited with Phoenix and be paid to Tung-Sol at the conclusion of the first term if all rent had been paid: that Phoenix acceded, and at the end of that term and as a stipu-

lation in the renewal lease applied the $400 to the rent first to accrue thereunder. For such action there was valid consideration:—the securing of a "good tenant" for a part only of the property originally leased. For purposes of legal clarity it would naturally have been better to state the situation in plain language instead of veiling what was in essence an assumption of the Clay debt of $400 under the guise of a "deposit."

The trial court directed a verdict for plaintiff. We think this was error for at least two reasons. The first is that the recital was at least evidential, and though contradicted, it was for the jury to decide that issue of fact. The second is that in addition to the recital, the chain of circumstances in the relations of the defendant with its two landlords affords ground for a finding that plaintiff agreed to credit the $400 as a condition precedent to securing the execution of the leases.

The judgment will therefore be reversed, to the end that a *venire de novo* issue.